UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

JANE DOE,

        Plaintiff,

  -against-                                    **COMPLAINT**  1:17-cv-1269 (LEK/CFH)

SKIDMORE COLLEGE,

        Defendant,

----------------------------------------------------------X

The Plaintiff, JANE DOE[1] by her attorney, STEWART LEE KARLIN, complaining of Defendant, SKIDMORE COLLEGE, alleges upon knowledge as to herself and her own actions and upon information and belief as to all other matter, as follows:

### NATURE OF THE CLAIM

1. This is a civil action based upon Defendant's violations of the Americans with Disabilities Act, 42 U.S.C. § 12182 by discriminating against Plaintiff due to her disability and perceived disability. Plaintiff is seeking damages for violating her civil rights.

### JURISDICTION AND VENUE

2. The Court has jurisdiction over Defendant Skidmore College pursuant to 42 U.S.C § 12117. Plaintiff has commenced this action pursuant to the ADA.

3. This action properly lies as the claims arose within this District in Saratoga County.

### PARTIES

4. At all times hereinafter mentioned, Plaintiff Jane Doe ("Plaintiff"), was and still is a student of the Defendant Skidmore College. ("Defendant or Skidmore"). The plaintiff has a

---

[1] Jane Doe is being used to protect the identity of Plaintiff's education and medical privacy.

disability and perceived disability (ADHD and anxiety) that impacted major life activities. Plaintiff has a mental impairment that substantially limits one or more major life activities, had a record of such an impairment and was regarded as having such an impairment.  Plaintiff also participated in protected activity pursuant to the ADA by requesting reasonable accommodations that were denied in part by Defendant.

5.     Defendant is duly organized and existing by virtue of the laws of the State of New York and upon information and belief is a non-profit corporation and conducts a significant amount of business in the State of New York.

## STATEMENT OF THE FACTS

6.     At the time of Plaintiff's enrollment, she was provided by Defendant with Defendant's policies regarding academic criteria for graduation and the EEO policies from the school, as well as the appeal procedures in the event of an alleged breach of the agreement. This formed the contract between the Plaintiff and Defendant. The contract was based on the terms and conditions for graduation that were offered by the Defendant at the time of Plaintiff's enrollment. Implicit in the contract, is to apply the rules uniformly and not to act discriminatorily when applying the policies to a given situation.

7.     Defendant by and through its agents breached the contract in the State of New York, and violated federal anti-discrimination laws hereinafter more specifically described.

8.     Plaintiff enrolled at Skidmore in September 2014 and is pursing BA in American Studies.  Plaintiff is due to graduate in May 2018.

9.     Plaintiff has a history of psychological treatment. Since 2009, she has been treated with medication to manage her ADHD. In addition, Plaintiff participated in Cognitive-Behavioral Therapy during Summer, 2016.  She had symptoms throughout the fall semester and failed two

courses and got an Incomplete for missing work. The parents became aware of her depression when they spoke to her and her parents sent her for therapy. She was diagnosed with depression in January, but she had exhibited symptoms throughout the semester. All of the issues her therapist warned about (e.g., that she would not be able to do work, that she would not seek help, etc. came out in the fall semester). Plaintiff went from being invited to write for admission to the academic honor society and on the Dean's list Spring Semester Freshman year, to being horribly inconsistent academically.

10. In January 2017, Plaintiff exhibited symptoms to her psychologist and psychiatrist that met the criteria for Major Depression.

11. In January 2017, Plaintiff suffered from a disability to wit: Plaintiff had recently been diagnosed with Major Depressive Disorder and Attention Deficit Hyperactivity Disorder, Combined Type.

12. Because of her medical conditions, Plaintiff struggled significantly to organize herself and maintain studying routines necessary to achieve academic marks commensurate with her intellect and skill. She was extremely sad and angry and lost motivation to meet her academic demands. Furthermore, she struggled to communicate her difficulties to adults who could assist.

13. Plaintiff is an intelligent, talented young woman who has great potential. However, she required accommodations to support her success and emotional well-being because her depression and ADHD negatively impacted her ability to perform to her academic potential. However, with appropriate accommodations, Plaintiff would academically succeed. If accommodations were not provided, Plaintiff would be in danger of academic failure, emotional distress, and physical self-harm.

14.     On January 22, 2017, Plaintiff emailed Ms. Hegener (ADA Coordinator) and indicated that Plaintiff's mother, would be coming up to school with Plaintiff to help get the appropriate support (reasonable accommodations) in place for her. Plaintiff's mother also emailed Ms. Hegener and stated: "I am currently in Saratoga Springs to help 'Plaintiff' get all her accommodations in place and would like to meet at your earliest convenience to discuss Plaintiff's' options."

15.     On January 23, 2017, Ms. Hegener (ADA Coordinator) Plaintiff's mother, and Plaintiff, met to discuss specific accommodations of Plaintiff's disabilities. At the January 23 meeting, the "Verification of Physical, Medical, Psychological Condition" form completed by Plaintiff's doctor had been submitted. The meeting discussed the accommodations Plaintiff's doctor had recommended to wit:

    a.     Housing change which was accommodated on January 24, 2017 (as per earlier documentation);

    b.     Plaintiff to receive tutoring and one-on-one support; (minimum of 2x per week)

    c.     Plaintiff to be permitted to be a full-time student with a reduced course load if necessary;

    d.     Copies of Plaintiff's syllabi to be provided to her parents;

    e.     Plaintiff's parents to have access to their daughter's grades and any other academic assessments; (e.g., mid-term assessments)

    f.     Most importantly, Plaintiff's parents to be notified if she was missing any assignments, meetings, classes, milestones, etc.;

    g.     Plaintiff's parents should promptly receive a copy of any emails, text messages, mailed notices or other communications from professors, advisers or other

    Skidmore personnel related to Plaintiff's academic performance; (e.g., grades, missed or late assignments, missed classes, etc.)

  h. Any communication with Plaintiff related to academic performance must include text messages or live phone calls to her cell phone and cannot be made solely by email.

  16. At the January 23 meeting, Ms. Hegener agreed to these accommodations except, with respect to access to mid-term grades (Paragraph No. 13 e). Hegener indicated that there was no way to capture mid-term grades, so there was no mechanism to provide the parents with those grades. Plaintiff continues to be treated by a counselor in Saratoga who was recommended by the Skidmore health department.

  17. Plaintiff was very forthcoming at the January 23 meeting about the importance of this accommodation (13f).; Ms. Hegener never indicated at any time that there was any issue with the sixth accommodation, (13f) providing the Parents with notification if Plaintiff missed any assignments, meetings, classes, milestones, etc. and in fact specifically agreed to that accommodation.

  18. The Plaintiff's Mother left that January 23 meeting with the clear understanding that Ms. Hegener had agreed to the requested accommodations (except for access to mid-term grades). Indeed, consistent with that belief, Skidmore appeared to be meeting its obligations regarding the accommodations. In particular, Plaintiff's housing was changed and weekly meetings between Plaintiff and Ms. Hegener were scheduled. Ms. Hegener never indicated that any further process was necessary for Skidmore to approve Plaintiff's accommodations.

  19. Consistent with the agreement reached at the January 23 meeting, on January 24, 2017, Plaintiff's father sent an email to Plaintiff's doctor stating the following:

"So, you are in the loop, I think things have been going pretty well in Saratoga. Housing was really easy (they let 'Plaintiff' pick from among available rooms). She is going to be moved in to her room by the end of today (a single ... in a dorm she wanted. I understand the RA will be told to check in on her .... She is in a suite and shares a bathroom with 3 or 4 other girls. The person in charge of accommodations is personally going to meet with 'Plaintiff' weekly. They are pretty much doing everything we wanted them to do. We cannot get access to grades during the semester, since they really have no system to capture mid-term grades. We will, however, be notified if she misses any deadline, assignment, etc."

20. On January 26 at 3:00 pm, Plaintiff's Mother and Plaintiff also met with Elizabeth McPhee, an Academic Advisor at Skidmore, who reviewed the list of accommodations with Plaintiff's Mother and Plaintiff. Plaintiff and Plaintiff's Mother met with Ms. McPhee at the request of Kim Marsella, the Director of Academic Advising, with whom Plaintiff's Father had numerous conversations regarding the need to accommodate Plaintiff. Ms. McPhee raised one issue --- texting Plaintiff instead of emailing her. In the end, she agreed they would work out the texting issue because "we all want [Plaintiff] to succeed and we will make the communications work, even if they had to go through her office."

21. On January 31, 2017, Plaintiff's Doctor provided the documentation Ms. Hegener had requested. In this letter, Plaintiff's Doctor cautioned "If accommodations are not provided, 'Plaintiff' is in danger of academic failure, emotional distress, and physical self-harm." Moreover, she specifically noted that Plaintiff "struggled to communicate her difficulties to adults who could assist." Finally, Plaintiff's Doctor concluded that she was "happy to answer any questions you may have about 'Plaintiff's psychological functioning or academic accommodations recommended." Plaintiff's Doctor requested that Ms. Hegener call her if she needed any further information.; however, Ms. Hegener never discussed with Plaintiff or anyone else any need to modify Plaintiff's accommodations.

22. Although a determination was made by Ms. Hegener orally regarding Plaintiff's request for reasonable accommodations, shockingly, Ms. Hegener failed to provide written confirmation of any determination regarding the accommodation requests. No notice (in writing or orally) was provided that Skidmore did not intend to accommodate Plaintiff as Ms. Hegener had agreed on January 23, 2017.

23. If there were any issues pertaining to the accommodations, Skidmore failed to engage in the interactive process and advise Plaintiff and her parents.

24. In fact, Plaintiff's professors did comply with accommodation (13f) and inform the ADA coordinator when work was missed, because it was a reasonable accommodation to meet. The class in which the Accommodation 13 f was specifically provided about being notified of missing assignments was American Cities: Washington DC with Professor Amber Wiley. Because of this accommodation, Plaintiff succeeded in that class. Consistent with Plaintiff's Doctor's diagnosis, Plaintiff never asked for the needed extension. Instead, consistent with Plaintiff's accommodations, on May 11, 2017 Elizabeth McPhee from Skidmore's Office of Academic notified Plaintiff's Father that Plaintiff had failed to turn in a final paper on time. Plaintiff's Father called Ms. Hegener and discussed with her the need for Plaintiff to complete all her work before Plaintiff left for summer break. In fact, after Plaintiff's Father was notified about Plaintiff's failure to hand in a paper on May 11, 2017 and after Plaintiff's Father and Ms. Hegener intervened as contemplated by the accommodations, Plaintiff completed her paper and an academic failure in the class at issue was averted.

25. The accommodation was reasonable, in that it did not create a hardship nor impact the academic integrity of the grading. All the accommodation required was telling Plaintiff's professors to inform the ADA office via email if Plaintiff missed any deadlines. This request was

critical to address Plaintiff's disability and academic needs.  However, in Plaintiff's history class, History of Latinos in America with Professor Katherine Paarlberg-Kvam, the Professor never advised the office of a series of deadlines (March 3, March 30, April 14) that Plaintiff had missed culminating in a paper that was due in May 2017.

26.     It should be noted that Plaintiff had done reasonably well on the final examination in History and would have academically succeeded but for the failure to ask for an extension and turn in the final paper which caused her to fail History.  If Plaintiff's Parents had been timely notified of the failure to meet not just the deadline for the paper in May 2017, but the other preceding deadlines, Plaintiff's Parents would have intervened and Plaintiff would have passed the History course. Put simply, if the accommodation had been provided and the Professor advised that a deadline was missed then Plaintiff's Parents would have intervened to prevent the failure. In other words, if the Academic Advising office had provided the accommodations and notified the Professor that she had to inform the Plaintiff's Parents or the Academic Advising Office or both of any missed deadlines, not only could Plaintiff's Parents have intervened but the Academic Advising Office could have intervened.  Plaintiff missing deadlines is a red flag that something is going on with Plaintiff emotionally that requires intervention.  It is about getting her work done, but it is also making sure she is not paralyzed by depression.

27.     Thereafter, Plaintiff attempted again through counsel to add the reasonable accommodation (13 f) but was advised that Accommodation 13f would not be provided in the upcoming Fall Semester.  Defendant has not provided a legitimate basis for the determination.

## **FIRST CLAIM FOR RELIEF-ADA**

28.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

29. Plaintiff is a protected individual within the meaning of the Americans with Disabilities Act 42 U.S.C. 12182.

30. Plaintiff has a disability within the meaning of the ADA.

31. Defendant DOE is a statutory party within the meaning of the ADA.

32. Defendant violated the ADA by failing to reasonable accommodate Plaintiff and by failing to engage in the interactive process.

33. As a result of the willful activities of defendant, plaintiff has been deprived of equal educational opportunities based upon her disability, and perceived disability discrimination in violation of the Americans with Disabilities Act 42 U.S.C. 12182.

## SECOND CLAIM FOR RELIEF-NYS EXECUTIVE LAW

34. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

35. As a result of the foregoing, defendant violated Executive Law § 296 by failing to reasonably accommodate Plaintiff and by failing to engage in the interactive process. As a result of defendant violating the Executive Law Plaintiff has been damaged.

## DEMAND FOR A JURY TRIAL

Plaintiff demands a trial by jury of all issues and claims in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

1. Compensatory damages including and related expenses and emotional distress;

2. A declaration that Plaintiff's rights have been violated under the ADA and New York State Human Rights law and equitable relief requiring

    Defendant to reasonably accommodate Plaintiff including but not limited to the parents to be notified if Plaintiff is missing any assignments, meetings, classes, and milestones.

3. Expungement of the failing grade in History and allowing Plaintiff to submit her paper in lieu of her missing paper and have her grade recalculated;

4. Damages to Plaintiff's reputation;

5. Attorney fees and costs, cannot yet be determined.

Dated: New York, New York  
November 17, 2017        STEWART LEE KARLIN  
                 LAW GROUP, P.C.

                 /s/Stewart Lee Karlin, Esq.  
                 STEWART LEE KARLIN, ESQ.  
                 Attorneys for Plaintiff  
                 111 John St., 22nd Floor  
                 New York, NY 10038  
                 (212) 792-9670