UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JANE DOE,

                        Plaintiff,

    -against-                                    1:17-CV-1269 (LEK/CFH)

SKIDMORE COLLEGE,

                        Defendant.

**MEMORANDUM-DECISION AND ORDER**

## I. INTRODUCTION

On November 17, 2017, plaintiff Jane Doe brought suit against defendant Skidmore College for failure to make reasonable accommodations in violation of both Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, and the New York Human Rights Law ("NYHRL"), N.Y. Exec. Law § 296. Dkt. No. 1 ("Complaint"). Defendant timely filed an answer to Plaintiff's Complaint on February 12, 2018. Dkt. No. 7 ("Answer"). Now before the Court is Defendant's motion for judgment on the pleadings, brought pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. No. 9 ("Motion"); see also Dkt. Nos. 9-1 ("Memorandum"), 12 ("Opposition"), 13 ("Reply"). For the reasons that follow, Defendant's Motion is granted in part and denied in part.

## II. BACKGROUND

### A. Factual Background

Plaintiff, "an intelligent, talented young woman [with] great potential," Compl. ¶ 13, enrolled in Defendant's undergraduate program in September 2014, seeking a bachelor's degree in American Studies, id. ¶ 8. At that time, Plaintiff "was provided by Defendant with

Defendant's policies regarding academic criteria for graduation . . . as well as the appeal procedures in the event of an alleged breach" of those policies. Id. ¶ 6.

Although Plaintiff had, since 2009, suffered from attention-deficit/hyperactivity disorder ("ADHD"), id. ¶ 9, her first two years at Skidmore passed largely uneventfully. The parties agree that Plaintiff was "on the Dean's list" for the spring semester of her first year, id. ¶ 9; Answer ¶ 10, and Plaintiff claims that she was invited "to write for admission to [Skidmore's] academic honor society" at the end of that year. Compl. ¶ 9.

However, during the summer of 2016—between her second and third years—Plaintiff participated in "Cognitive-Behavioral Therapy." Id. ¶ 9. She subsequently failed two courses during the Fall 2016 semester. Id. Then, in January 2017, "Plaintiff exhibited symptoms to her psychologist and psychiatrist that met the criteria for Major Depression," id. ¶ 10, and she was "diagnosed with Major Depressive Disorder" in addition to ADHD, id. ¶ 11.

On January 22, 2017, both Plaintiff and her mother separately contacted "Ms. Hegener"[1] in order to "get the appropriate support (reasonable accommodations) in place for her." Id. ¶ 14. The three women met the next day "to discuss specific accommodations" that Defendant could provide for Plaintiff, including the following eight accommodations recommended by Plaintiff's doctor: (1) a housing change; (2) tutoring and one-on-one support; (3) a possible reduction in Plaintiff's course load; (4) distributing Plaintiff's syllabi to Plaintiff's parents; (5) distributing Plaintiff's grades (including her midterm grades) to Plaintiff's parents; (6) notifying Plaintiff's

---

[1] In her Complaint, Plaintiff describes Hegener as "[t]he person in charge of accommodations" at Skidmore, and claims that she held the title of "ADA Coordinator." Compl. ¶ 14. Defendant, while admitting that contact between Plaintiff and Hegener occurred, denies that Hegener held such a title. Answer ¶¶ 11–12.

2

parents if Plaintiff missed any "assignments, meetings, classes, milestones, etc.;" (7) copying Plaintiff's parents on "any emails, text messages, mailed notices or other communications" sent to Plaintiff "from professors, advisers or other Skidmore personnel" about her academic performance; and (8) requiring Plaintiff's professors and advisors to send her academic communications through text messages or live phone calls, as well as emails. Id. ¶ 15. Following that meeting, Plaintiff and her mother also met with Elizabeth McPhee, an academic advisor employed by Defendant, on January 26, 2017. Id. ¶ 20. According to the Complaint, the same eight accommodations were also discussed at that later meeting. Id.

The parties dispute Hegener's and McPhee's responses to Plaintiff's requested accommodations. Plaintiff claims that Hegener agreed to all of the requested accommodations, except the provision regarding Plaintiff's midterm grades. Id. ¶¶ 15–18. According to Plaintiff, McPhee also agreed to all of the requested accommodations, despite initially expressing some reservations about the texting requirement. Id. ¶ 20. Eventually, Plaintiff claims that McPhee agreed to "work out the texting issue," "even if [the texts] had to go through [McPhee's] office." Id.

Defendant, on the other hand, claims that Hegener and McPhee agreed to the first four accommodations (the "Accepted Accommodations"), Answer ¶¶ 13–16, but refused the remaining four (the "Contested Accommodations"), id. ¶¶ 17–20. As to the fifth and sixth accommodations—regarding the distribution of Plaintiff's grades and missed assignment notifications—Defendant claims that Hegener agreed only to provide Plaintiff's parents with "mid-term evaluations and Unsatisfactory Work Notices," and to notify them in the event that she "received a notice from Plaintiff's professors that Plaintiff had missed an assignment or other

3

event or deadline." Id. ¶ 17–18. As to the seventh accommodation—copying Plaintiff's parents on any academic communications sent to Plaintiff—Defendant states that "a different Skidmore representative" explained to Plaintiff's parents that "it was inappropriate for professors to copy a student's parents on all emails and communications," though the Office of Academic Advising would notify Plaintiff's parents if it received notice of such a communication. Id. ¶ 19. And as to the eighth accommodation—the texting requirement—Defendant claims that "a different Skidmore representative" told Plaintiff's parents that "faculty members could decide if they would text or call Plaintiff in addition to emails," but also made clear "that Plaintiff needed to check her emails." Id. ¶ 20.

Following those conversations, Plaintiff experienced problems in two of her classes during the Spring 2017 semester. First, in "American Cities: Washington D.C.," taught by Professor Amber Wiley, Plaintiff "failed to turn in a final paper on time." Compl. ¶ 24. However, Professor Wiley "inform[ed] the ADA office via email" about the missed deadline, and McPhee then forwarded that message on to Plaintiff's father. Id. ¶ 25. Following her father's intervention, Plaintiff was able to request an extension, submit the final paper, and pass the course. Id. Second, in "History of Latinos in America," taught by Professor Katherine Paarlberg-Kvam, Plaintiff missed a series of intermediate deadlines related to a final paper due at the end of the semester, and eventually failed to turn in that assignment. Id. In this case, however, no notification of the missed deadline was received by either Plaintiff's parents or her advisors, and Plaintiff failed the course. Id. ¶ 26. As a result, despite performing "reasonably well" on the final examination related to that course, Plaintiff received a failing grade. Id. Plaintiff claims that, had Defendant "provided the accommodations and notified [Professor Paarlberg-Kvam] that she had to inform

[Plaintiff's parents] or the Academic Advising Office . . . of any missed deadlines," Plaintiff's parents and/or Defendant's representatives could have intervened and ensured that Plaintiff fulfilled her academic obligations. Id.

**B. Procedural Background**

On November 17, 2017, Plaintiff filed her Complaint, alleging violations of both the ADA and NYHRL as a result of Defendant's failure to provide Plaintiff with the Contested Accommodations and/or "to engage in the interactive process" of developing alternative accommodations. Id. ¶¶ 32, 35. Plaintiff seeks compensatory and declaratory relief, expungement of her failing grade in "History of Latinos in America," an opportunity to fulfill the remaining requirements for that class and to have her final grade recalculated, and injunctive relief requiring Defendant to provide the Contested Accommodations in the future. Id. at 9–10. Defendant filed its Answer on February 12, 2018, raising a number of affirmative defenses. Answer ¶¶ 32–37.

Then, on February 16, 2018, Defendant filed the Motion. In it, Defendant argues that the Accepted Accommodations—those which the parties agree were actually provided to Plaintiff—"went above and beyond [Defendant's] ADA obligations," Mem. at 10, while the Contested Accommodations, which Defendant concedes were not provided to Plaintiff, "were unreasonable and would [have] fundamentally alter[ed] the nature of Skidmore's program," id. at 11. In addition, Defendant argues that an essential part of its undergraduate program consists of training "its graduates to be responsible and productive citizens in society," which entails that "students must be individually responsible for their own assignments, deadlines, and classes." Id. at 13. Requiring Defendant to undertake the Contested Accommodations would undermine that objective, Defendant reasons, because doing so would "allow [Plaintiff] to rely

5

on her parents instead of accepting responsibility for her own academic obligations." Id. at 14. Finally, Defendant notes that Plaintiff cannot maintain a claim for monetary relief under Title III of the ADA, because such relief "is not available to private individuals." Id. at 15 (quoting Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 86 (2d Cir. 2004)).

In response, Plaintiff timely filed her Opposition, which argues that the Contested Accommodations (1) were "simple, reasonable and imposed no hardship on Defendant," Opp'n at 1; (2) would not have required Defendant to "change its program or lower the bar academically" for Plaintiff, id. at 11; and (3) would have allowed Plaintiff to achieve a passing grade in Professor Paarlberg-Kvam's "History of Latinos in America," id. at 13–14. Finally, Plaintiff contends that, even if there were issues with certain of the Contested Accommodations, Defendant failed to engage in the "interactive process" required by the ADA for developing reasonable accommodations for disabled individuals. Id. at 15.

## III. LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to "move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Granting such a motion "is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." Sellers v. M.C. Floor Crafters Inc., 842 F.2d 639, 642 (2d Cir. 1988). "The standard for addressing a Rule 12(c) motion . . . is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). Thus, a complaint should be dismissed if it fails to "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). On the other

hand, if a complaint's factual allegations "raise a right to relief above the speculative level," it should not be dismissed. Twombly, 550 U.S. at 544.

"In deciding a motion for judgment on the pleadings, a court may consider the pleadings and attached exhibits, statements or documents incorporated by reference, and matters subject to judicial notice." Merck & Co. v. Mediplan Health Consulting, 425 F. Supp. 2d 402, 410 (S.D.N.Y. 2006). However, "[i]n evaluating a Rule 12(c) motion, the court must view the pleadings in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party." Madonna v. United States, 878 F.2d 62, 65 (2d Cir. 1989). Therefore, "[t]he granting of a motion for judgment on the pleadings is appropriate only if, with all reasonable inferences drawn in favor of the non-moving party, the non-moving party has failed to allege facts that would give rise to a plausible claim or defense." Prowley v. Hemar Ins. Corp. of Am., No. 05-CV-981, 2010 WL 1848222, at *3 (S.D.N.Y. May 7, 2010).

## IV. DISCUSSION

### A. Reasonableness of the Contested Accommodations

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." § 12182(a). "To state a claim under Title III, [a plaintiff] must allege (1) that she is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) that defendants discriminated against her by denying her a full and equal opportunity to enjoy the services defendants provide." Camarillo v. Carrols Corp., 518 F.3d 153, 156 (2d Cir. 2008)

7

(citing § 12182(a)). Disability discrimination claims brought pursuant to the NYHRL are governed by the same standard. See Rodal v. Anesthesia Grp. of Onondaga, 369 F.3d 113, 117 n.1 (2d Cir. 2004) ("New York State disability discrimination claims are governed by the same legal standards as federal ADA claims." (citing Parker v. Columbia Pictures Indus., 204 F.3d 326, 332 n.1 (2d Cir. 2000))).

Defendant has conceded, for the purposes of the Motion, that the first two elements of the Camarillo test have been met in Plaintiff's case. Mem. at 6. The Court will therefore focus its attention on the third element.

Discrimination within the meaning of the third Camarillo element can occur when qualified disabled individuals are denied "'reasonable accommodations' that permit them to have access to and take a meaningful part in . . . public accommodations." Powell, 364 F.3d at 85 (citing Henrietta D. v. Bloomberg, 331 F.3d 261, 273 (2d Cir. 2003)). "Reasonable accommodations are 'affirmative accommodations to ensure that facially neutral rules do not in practice discriminate against individuals with disabilities.'" Lipton v. N.Y. Univ. Coll. of Dentistry, 865 F. Supp. 2d 403, 408–09 (S.D.N.Y. 2012) (quoting Henrietta D., 331 F.3d at 275).

In light of the Supreme Court's guidance that institutions of higher learning "must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation," Bd. of Curators, Univ. of Mo. v. Horowitz, 435 U.S. 78, 96 n.6 (1978), courts in this Circuit have generally held that, "[w]hen reviewing the substance of a genuinely academic decision, courts should accord the faculty's professional judgment great deference," Powell, 364 F.3d at 88 (citing Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 225 (1985)). Therefore, "a court should defer to an academic institution's decision

that a particular accommodation is not reasonable when [the institution] has 'diligently assessed the available options and then made an academic judgment . . . that to accommodate the student would work a change in the substance of its . . . program, and impose an undue hardship on its academic program.'" Lipton, 865 F. Supp. 2d at 409 (quoting Powell, 364 F.2d at 88). Notably in that regard, "a defendant need not make an accommodation at all if the requested accommodation would fundamentally alter the nature of the service, program, or activity," or if it would "impose[] an undue hardship on [the] program's operation." Powell, 364 F.3d at 88 (internal quotation marks and citations omitted). As such, a covered entity does not "have to provide a disabled individual with every accommodation he requests or the accommodation of his choice.'" McElwee v. County of Orange, 700 F.3d 635, 641 (2d Cir. 2012) (citing Find v. N.Y.C. Dep't of Personnel, 53 F.3d 565, 567 (2d Cir. 1995)).

That said, even within the context of higher education, "the determination of whether a particular [accommodation] is 'reasonable' involves a fact-specific, case-by-case inquiry that considers, among other factors, the effectiveness of the [accommodation] in light of the nature of the disability in question and the cost to the organization that would implement it." Staron v. McDonald's Corp., 51 F.3d 353, 356 (2d Cir. 1995). Accordingly, "[a]ll that plaintiffs must do at the motion to dismiss stage is plead the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." Shaywitz v. Am. Bd. of Psychiatry & Neurology, 675 F. Supp. 2d 376, 390 (S.D.N.Y. 2009) (quotation marks and citations omitted).

Defendant cites to a number of cases in support of its position that "[t]he Court should grant Skidmore deference in its decision that the [Contested A]ccommodations would fundamentally alter its program and substantially lower its academic standards." See Mem.

at 12–13 (citing Powell, 364 F.3d at 88; Falchenberg v. N.Y. State Dep't of Educ., 642 F. Supp. 2d 156, 165 (S.D.N.Y. 2008); Maczaczyj v. New York, 956 F. Supp. 403, 409 (W.D.N.Y. 1997); Rawdin v. Am. Bd. of Pediatrics, 985 F. Supp. 2d 636, 654 (E.D. Pa. 2013)). However, nearly all of those decisions occurred at or after the summary judgment stage, and their holdings are inapplicable at this phase of the parties' dispute.

More relevant is Lipton, a decision handed down by the district court for the Southern District of New York, which dismissed an ADA suit brought by a plaintiff dentistry student who suffered from a reading disorder that negatively impacted his test-taking ability. 865 F. Supp. 2d at 405. As a result of his disability, the plaintiff was afforded a "time-and-a-half accommodation," which allowed him additional time to complete required examinations. Id. Despite that accommodation, the plaintiff failed the National Board Dental Examination ("NBDE")—which students were required to pass in order to graduate from the defendant university's program—on multiple occasions, resulting in his expulsion. Id. at 406. He then brought suit, alleging violations of his rights under the ADA and NYHRL, and requesting additional accommodations to (1) reinstate his candidacy in the defendant's program; (2) afford him unlimited opportunities to retake the NBDE; and (3) waive any contrary graduation requirements. Id. at 409–10. The district court granted the defendant's subsequent motion to dismiss, finding "that the requested accommodations [we]re unreasonable in several respects." Id. at 410. Most notably, the accommodations (1) would "to a great degree" alter the defendant's academic policies and undermine its ability to impose a time limit on a student's satisfaction of graduation requirements; (2) would bear only "a tenuous relationship" to the alleged disability; and (3) "concern[ed] generalized anxiety" rather than the disability specifically alleged. Id.

The Court also finds <u>Shaywitz</u> instructive. The plaintiff in that case was a "licensed physician and exceptionally well-qualified psychiatrist" who suffered from dyslexia, extreme anxiety, and arrhythmias, which manifested in a lack of "oral fluency." 675 F. Supp. 2d at 379–80. He sued the American Board of Psychiatry and Neurology under the ADA following his repeated failure of an oral exam which, though required for the plaintiff's certification due to his graduation date, was subsequently eliminated by the Board. <u>Id.</u> at 382. Ruling on the Board's motion to dismiss, the district court found that the "reasonableness" of the plaintiff's requested accommodation—elimination of the oral exam requirement—depended both on (1) the extent of the plaintiff's disability; as well as (2) the value of the oral exam. <u>Id.</u> at 391. Those questions of fact, it found, were better suited to elucidation through the discovery process, meaning the plaintiff had, at the pleading stage, satisfied his burden. <u>Id.</u> In coming to that conclusion, the court also found plausible the plaintiff's argument "that certifying [the plaintiff] without his having to pass the [oral exam] . . . would not fundamentally alter the nature of the Board-certification process." <u>Id.</u> (internal quotation marks omitted).

Accepting Plaintiff's factual allegations and drawing all reasonable inferences in her favor, the Court finds that Plaintiff has satisfied her burden at this stage of the litigation. Unlike in <u>Lipton</u>, there is no indication that the Contested Accommodations would require Defendant to fundamentally alter its graduation requirements, nor would they allow Plaintiff to avoid completing her work and graduating in a timely manner. Instead, at stake here is Defendant's interest in ensuring that its graduates are sufficiently independent such that they become "responsible and productive citizens in society," Mem. at 13, which must be balanced against the extent of Plaintiff's depression and ADHD as they relate to her ability to independently manage

11

her studies. Although the Court sympathizes with Defendant's objective, it will not find as a matter of law that relaxation of its goals would be unreasonable or unduly burdensome when, as here, a student has been diagnosed with a disability that could plausibly affect her ability to handle all of the deadlines associated with a full undergraduate course load. Those "relevant questions of fact [] presumably will be elucidated by the discovery process and, if appropriate, trial." Shaywitz, 675 F. Supp. 2d at 391.

Nor is the Court persuaded, at least at this stage of the litigation, by Defendant's argument that the Contested Accommodations "would fundamentally alter the nature of Skidmore's academic program." Mem. at 12. The Complaint asserts that Plaintiff is an "intelligent" and "talented" student, Compl. ¶ 13, but that her disability makes it difficult for her to independently maintain her study schedule. Surely, Defendant has an interest in ensuring that its graduates have complied with all of their academic requirements, and the nature of its undergraduate program would be altered if that interest were undermined. But it is not clear to the Court that implementing the Contested Accommodations—by essentially requiring Plaintiff's professors to spend more time communicating with Plaintiff, Plaintiff's parents, and administrative officials—would fundamentally alter Defendant's program. Except insofar as the Contested Accommodations contemplate Plaintiff's submission of past-due assignments (a practice that seems to be fairly commonplace, based on the Complaint's characterization of Plaintiff's academic career at Skidmore), the requested accommodations would in no way alter the grading or graduation standards to which Plaintiff would be held.

Finally, the Court also rejects Defendant's argument that Plaintiff's failing grade in "History of Latinos in America" was unavoidable, and that the Contested Accommodations

"would [have] do[ne] nothing to cure" that result. Reply at 5; Mem. at 13–15. A favorable reading of the pleadings indicates that, in addition to the final paper deadline, Plaintiff also missed a number of intermediate deadlines throughout the semester. See Compl. ¶ 25 ("[I]n Plaintiff's history class . . . Professor [Paarlberg-Kvam] never advised the office of a series of deadlines (March 3, March 30, April 14) that Plaintiff had missed[,] culminating in a paper that was due in May 2017."). As such, had the Contested Accommodations been implemented at the beginning of the semester, Plaintiff's parents would presumably have been notified of the deadlines (and could have intervened) by March or April 2017. The Court therefore finds it plausible that, with the Contested Accommodations in place, Plaintiff may have had an opportunity to complete the final paper and earn a passing grade.

As a result, the Court finds that Plaintiff has satisfied her burden at this stage of the litigation, and that her ADA and NYHRL claims survive Defendant's Motion.

**B. Failure to Engage in an Interactive Process**

The Complaint states that, even "[i]f there were any issues pertaining to the [Contested A]ccommodations, Skidmore failed to engage in the interactive process and advise Plaintiff and her parents." Compl. ¶ 23. Specifically, "by first agreeing to provide [certain] accommodation[s] and then by failing to provide Plaintiff notice and an explanation of why [the Contested Accommodations were] not going to be granted," Plaintiff claims that Defendant "breached its statutory duty" to Plaintiff under the ADA. Opp'n at 15–16. Defendant counters that it did engage in an interactive process, through both the Hegener and McPhee meetings as well as Defendant's provision of the Accepted Accommodations. Reply at 5–6. Relying on its position that the Contested Accommodations were unreasonable as a matter of law, Defendant also argues

13

that Plaintiff's interactive process claims should be dismissed because "a failure to engage in the interactive process does not independently give rise to an ADA claim." Id. at 6.

The "interactive process" argument is most commonly cited within the context of employment disputes, because the ADA requires that "employers and employees work together to assess whether an employee's disability can be reasonably accommodated." Jackan v. N.Y. State Dep't of Labor, 205 F.3d 562, 566 (2d Cir. 2000) (citations omitted). Indeed, the Second Circuit has held that "an employer, by failing to engage in a sufficient interactive process, risks not discovering a means by which an employee's disability could have been accommodated and thereby increases the chance that it will be found to have violated the ADA." McBride v. BIC Consumer Prods. Mfg. Co., Inc., 583 F.3d 92, 101 (2d Cir. 2009) (citation omitted). "Included in this obligation is the requirement that [an employer] communicate with [its employees] in good faith." Picinich v. United Parcel Serv., 321 F. Supp. 2d 485, 511 (N.D.N.Y. 2004) (citing Mengine v. Runyon, 114 F.3d 415, 420 (3d Cir. 1997)). However, "there is no valid independent claim under the ADA for failure to engage in an interactive process," Sheng v. M&TBank Corp., 848 F.3d 78, 87 (2d Cir. 2017), meaning an interactive process claim cannot succeed "if no reasonable accommodation is available," Battle v. United Parcel Serv., 438 F.3d 856, 864 (8th Cir. 2006).

Neither party has comprehensively addressed whether the interactive process requirement applies in the educational context. See Hartnett v. Fielding Graduate Inst., 198 F. App'x 89, 94 (2d Cir. 2006) (stating that the Second Circuit has yet to determine whether the duty to undertake an interactive process "applies in the educational as opposed to the employment context"). Although Plaintiff claims in conclusory fashion that, "[u]nder section III of the ADA [], schools

are bound to engage in [an] interactive process," Opp'n at 14, she points to no caselaw in support of that proposition. Nonetheless, the Court will not dismiss Plaintiff's claims when neither party has raised the issue providing a potential grounds for dismissal. Perez v. Ortiz, 849 F.2d 793, 797 (2d Cir. 1988) ("[T]he general rule is that a district court has no authority to dismiss a complaint for failure to state a claim upon which relief can be granted without giving the plaintiff an opportunity to be heard." (internal quotation marks and citations omitted)). Instead, the Court will assume, without deciding, that the interactive process requirement does apply in the educational context and that it could therefore provide Plaintiff with an independent basis for relief against Defendant.

Construing the pleadings in the light most favorable to Plaintiff and drawing all reasonable inferences in her favor, the Court finds that Plaintiff's allegations are sufficient to support an interactive process claim. Plaintiff claims that, during her January 2017 meetings with Hegener and McPhee, she was explicitly told that all of her requested accommodations would be implemented by Defendant. Compl. ¶¶ 15–20. Then, without any explanation or further communication, Defendant unilaterally decided to implement only half of the previously agreed-upon accommodations. Id. ¶ 22. Plaintiff only learned of Defendant's decision at the end of the ensuing semester, and suffered academic hardship as a result. Id. ¶¶ 25–26. By alleging that Defendant failed to communicate those changes, Plaintiff has called into question whether Defendant engaged in good faith in the interactive process and has therefore satisfied her burden at this stage of the litigation. See Equal Emp't Opportunity Comm'n v. Yellow Freight Sys., Inc., No. 98-CV-2270, 2002 WL 31011859, at *23 (S.D.N.Y. Sept. 9, 2002) (finding that a defendant's failure "to engage in a meaningful dialogue" with a plaintiff "constitutes evidence of

bad faith" in violation of the ADA (citing Beck v. Univ. of Wisc. Bd. of Regents, 75 F.3d 1130, 1135 (7th Cir. 1996))). Furthermore, because the Court has already declined to find the Contested Accommodations unreasonable as a matter of law, Defendant's argument that Plaintiff's "interactive process" theory cannot independently give rise to an ADA claim is unavailing.

The Court therefore finds that Plaintiff has satisfied her burden at this stage of the litigation, and that her interactive process claim under the ADA survives Defendant's Motion.

### C. Availability of Compensatory Damages

Finally, Defendant argues that the Complaint improperly seeks monetary relief under Title III of the ADA, despite the fact that "[a] private individual may only obtain injunctive relief for violations of a right granted under Title III; [s]he cannot recover damages." Powell, 364 F.3d at 86 (citing Newman v. Piggie Park Enters., Inc., 390 U.S. 400, 402 (1968)). Plaintiff's Opposition effectively concedes that point, but rightly points out that Plaintiff "is still entitled to compensatory damages under the [NYHRL]." Opp'n at 16.

The Court agrees, and will therefore dismiss with prejudice Plaintiff's claims for compensatory relief only insofar as they arise under the ADA.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion (Dkt. No. 9) is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED**, that Plaintiff's claims for compensatory damages under the ADA are **DISMISSED with prejudice**; and it is further

16

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the local rules.

**IT IS SO ORDERED.**

DATED: August 20, 2018
Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge